UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                                                                       Case No. 94-10285-CEC

JOHN SWIFT, JR a/k/a John B. Swift
And LINDA SWIFT a/k/a Linda S. Swift                                  Chapter 7

                                 Debtor.
----------------------------------------------------------x
ROBERT BURTON,

                         Plaintiff

                                                 Adv. Pro. No. 14-01045-CEC

                   - against -

PAUL KROHN, in his official capacity as Chapter 7
Trustee, PAUL KROHN, in his personal capacity,
KEVIN NASH, Esq., and GOLDBERG, WELPRIN,
FINKEL & GOLDSTEIN, LLP

                         Defendants.
----------------------------------------------------------x

## DECISION

Appearances:

| | |
|---|---|
| Robert Burton | J. Ted Donovan, Esq. |
| 345 East 93rd Street | Goldberg, Weprin, Finkel & Goldstein, LLP |
| New York, NY 10128 | 1501 Broadway |
| *Pro Se* Plaintiff | 22nd Floor |
| | New York, NY 10036 |
| | *Attorney for Defendants* |

CARLA E. CRAIG

Chief United States Bankruptcy Judge

This matter comes before the Court on motion for judgment on the pleadings by defendants, Paul I. Krohn in his capacity as Chapter 7 Trustee, Paul I. Krohn in his personal capacity, Kevin Nash, Esq., and Goldberg, Weprin, Finkel & Goldstein, LLP (collectively "Defendants"), seeking to dismiss the complaint filed by Robert Burton ("Burton" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(c), made applicable to this adversary proceeding by Rule 7012(b).[1] In addition, Defendants seek judgment on their counterclaim for sanctions pursuant to 28 U.S.C. § 1927.

Because Burton has failed to state a cause of action for intentional infliction of emotional distress or to allege grounds adequate to support the relief he seeks under Rule 9011, § 107, or New York Judiciary Law § 487, the complaint is dismissed. Because sanctions under 28 U.S.C. § 1927 are not available against non-attorney *pro se* litigants, and because the record does not establish bad faith warranting sanctions under the Court's inherent power, Defendants' motion for sanctions is denied, and Defendants' counterclaim is dismissed.

## Background

On February 17, 2012, Paul I. Krohn ("Trustee"), as Chapter 7 Trustee in In re Swift (Case No. 94-10285-CEC), commenced an adversary proceeding against Robert Burton and Jean Bismuth (the "Declaratory Judgment Action"). (Compl., Adv. Pro. No. 12-01044, ECF Doc. No. 1.)[2] The Trustee's attorney in the Declaratory Judgment Action was Goldberg, Weprin, Finkel & Goldstein, LLP. (Compl., Adv. Pro. No. 12-01044, ECF Doc. No. 1.) In that proceeding, the Trustee sought, among other things, a declaratory judgment that a 50% interest in 3 cooperative apartments, units 2L, 2U, and 4M, located at 44-14 Newtown Road, Astoria, NY ("Apartments"),

---

[1] All statutory references are to the United States Bankruptcy Code, 11 U.S.C. and all Rule references are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.
[2] Citations to "ECF" are to documents filed on the docket of this proceeding, identified by docket number.

1

which Burton claimed to own, were in fact owned by John Swift, Jr., a debtor in the bankruptcy case ("Swift" or "Debtor"), and therefore were property of the bankruptcy estate. (Compl., ¶¶ 27-30, Adv. Pro. No. 12-01044, ECF Doc. No. 1.)

In the complaint in the Declaratory Judgment Action, the Trustee alleged that the apartments were "…long hidden assets…[u]ndisclosed throughout the many years of this case," which he first learned of from George Banat, a creditor of the Debtor, who contacted the Trustee in 2011, on the eve of the final meeting of creditors, after receiving the Trustee's proposed final report, "request[ing] information concerning the disposition of the Apartments." (Compl., ¶¶ 1, 15, 16, Adv. Pro. No. 12-01044, ECF Doc. No.1.)  However, in papers later filed in connection with the parties' motions for summary judgment, the Trustee acknowledged that, in a complaint filed in 1994, objecting to the Debtor's discharge, he alleged that the Debtor owned interests in the Apartments which they had failed to disclose. (Suppl. Decl. in Opp'n to Def's. Mot. for Summ. J., ¶¶8-9, Adv. Pro. No. 12-01044, ECF Doc. No. 65.) He explained that until he re-read the complaint objecting to discharge (which, because it was filed in 1994, was not on the Court's electronic docket, but in archives) he did not remember the Apartments or the allegations he had made concerning them. (Suppl. Decl. in Opp'n to Def's. Mot. for Summ. J., ¶¶8-9, Adv. Pro. No. 12-01044, ECF Doc. No. 65.) In the decision granting the Trustee's motion for summary judgment in the Declaratory Judgment Action, it was noted that the Trustee did not explain why he failed to pursue the Debtor's interest in the Apartments in 1994. In re Swift, 496 B.R. 89, 100 (Bankr, E.D.N.Y. 2013) (Decision, p.12-13, Adv. Pro. No. 12-01044-CEC, ECF Doc. No. 76.) Despite the Trustee's delay in pursuing these assets, Burton's argument that the Trustee's claim to the Apartments was barred by laches was rejected, based on a balancing of the equities. In re Swift at 99-102 (Decision, p.12-13, Adv. Pro. No. 12-01044-CEC, ECF Doc. No. 76.)

Accordingly, on August 6, 2013, a decision and an order were entered in the Declaratory Judgment Action granting the Trustee's motion for summary judgment on the claims against Burton and declaring that the 50% ownership interest in the Apartments held by Burton is property of the bankruptcy estate. In re Swift, 496 B.R. 89 (Bankr, E.D.N.Y. 2013) (Decision, Adv. Pro. No. 12-01044-CEC, ECF Doc. No. 76; Order, Adv. Pro. No. 12-01044-CEC, ECF Doc. No. 75.) Burton was ordered to turn over the Apartments to the Trustee pursuant to § 542, and to account for monies received on account of his purported ownership interest in the Apartments throughout the period he had possession. In re Swift 496 B.R. at 106 (Decision, p.23, Adv. Pro. No. 12-01044-CEC, ECF Doc. No. 76.)

On March 24, 2014, Burton commenced this adversary proceeding against Defendants. (Compl., Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 1.) The complaint alleges that certain unidentified statements made by Defendants in papers filed in the Declaratory Judgment Action were defamatory, constituted intentional infliction of emotional distress, warrant sanctions in the form of attorneys' fees under Rule 9011, violated New York Judiciary Law § 487, and should be expunged from the record, presumably pursuant to § 107. (Compl., ¶¶ 23, 26, Adv. Pro. No. 14-01045-CEC, ECF Doc. No.1.) Burton bases his claims on statements made by Paul Krohn in the Declaratory Judgment Action, allegedly accusing Burton:

> A. of intentionally concealing the 44-14 [Apartments] Claim from plaintiff [Trustee] with the specific intent of criminally defrauding the Swift bankruptcy estate of its value
> B. of having acted in concert with Debtor John Swift to fraudulently conceal that Claim from plaintiff [Trustee] with the specific intent of depriving the Swift bankruptcy estate of its benefit

(Compl., ¶ 11, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 1.) Burton further alleges that:

> Defendants filed with [sic] false allegations about plaintiff with actual knowledge that such allegations would cause plaintiff intense emotional distress – as they did. Defendants published their

> false allegations about plaintiff with the additional specific intents of :
> A. making defense of #12-[0]1044 more difficult
> B. wrongfully biasing the Court vs. plaintiff
> C. extorting money from plaintiff to settle 12-[0]1044

(Compl., ¶¶ 21-22, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 1.)

On June 19, 2014, Defendants filed an answer in which they denied Burton's allegations and asserted affirmative defenses. (Answer, ¶¶1-8, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 15.) Defendants contend that all statements made in connection with the Declaratory Judgment Action are privileged as statements made in the course of litigation; that because the Trustee's knowledge of the existence of the Apartments in 1994 was disclosed to the Court and found to be "immaterial and of no detriment to the Plaintiff" in the Declaratory Judgment Action, the doctrines of law of the case, *res judicata*, and collateral estoppel prevent Burton from re-litigating this issue; and that as a *pro se* litigant legal fees under Rule 9011 are unavailable to Burton as a matter of law. (Answer, ¶¶ 5-8, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 15.) Defendants also filed a counterclaim in which they allege that Burton's complaint was filed with "full knowledge of the lack of merit of the allegations contained therein, for the sole purpose of harassment," and as a "strategy to try to manufacture bogus claims," so that he would have something to bargain with in attempting to reduce the amount he will have to disgorge from monies received as a consequence of his purported ownership of the Apartments. (Answer, ¶11, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 15.)  Defendants seek sanctions for costs, expenses, and attorneys' fees pursuant to 28 U.S.C. § 1927 for "knowingly, vexatiously and unreasonably increas[ing] the litigation before this Court." (Answer, ¶¶ 12-13, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 15.)

On July, 17, 2014, Burton filed a reply to Defendants' counterclaim contesting Defendants' legal analysis and asserting that Defendants' answer contained knowing false denials of allegations made in Burton's complaint. (Reply, ¶1, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 17.)

On April 20, 2015, pursuant to Fed. R. Civ. P. 12(c), Defendants moved for judgment on the pleadings, seeking dismissal of all of Burton's claims, and seeking judgment on their counterclaim and an award of sanctions. (Mot. for J. on the Pleadings, ¶¶ 1-4, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 28.)

On June, 26, 2015 Burton withdrew his defamation claim, acknowledging that it is unsupported by controlling law. (Reply Decl., ¶¶ 1-9, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 36.)

## Jurisdiction

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §1334(b), the Eastern District of New York standing order of reference dated August 28, 1996, as amended by order dated December 5, 2012, and 28 U.S.C. §157(b)(1).

## Legal Standard

In evaluating a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court applies the same standard as for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Geron v. Seyfarth Shaw LLP (In re Thelen LLP), 736 F.3d 213, 218 (2d Cir. 2013); Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009).

To overcome a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A court must analyze under the "assumption that all the

5

allegations in the complaint are true." Id. at 555. The facts pleaded must establish "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009); In re Khafaga, 419 B.R. 539, 545 (Bankr. E.D.N.Y. 2009) ("Conceivable claims are no longer sufficient."). When evaluating the complaint the Court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir.2001) (internal quotation marks omitted).

When deciding a motion brought under Fed. R. Civ. P. 12(c) or 12(b)(6), the Court must limit its review to facts and allegations contained in the complaint, documents incorporated into the complaint by reference or attached as exhibits, and matters of which the Court may take judicial notice. In re Thelen LLP, 736 F.3d at 218–19; In re Monahan Ford Corp. of Flushing, 340 B.R. 1, 20-21 (Bankr. E.D.N.Y. 2006).

**Discussion**

A. <u>Plaintiff's Claim for Intentional Infliction of Emotional Distress</u>

Burton's complaint asserts claims for both defamation and intentional infliction of emotional distress. (Compl., ¶ 26, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 1.) New York law does not recognize a separate cause of action for intentional infliction of emotional distress and defamation when the claims are "duplicative… as they allege no new facts." Perez v. Violence Intervention Program, 984 N.Y.S.2d 348, 349 (1st Dep't 2014). A plaintiff may "properly recover for the alleged emotional distress caused by the defamatory statements under the cause of action for defamation," but may not assert a separate claim for intentional infliction of emotional distress. Brancaleone v. Mesagna, 736 N.Y.S.2d 685, 687 (2nd Dep't 2002).

Because Burton withdrew his claim for defamation, the Court will evaluate his claim for intentional infliction of emotional distress.

Under New York law, to establish a *prima facie* claim for intentional infliction of emotional distress, it is necessary to show: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. Howell v. New York Post Co., 81 N.Y.2d 115, 121 (1993). In this case, Plaintiff alleges that these elements have been met by statements made in pleadings filed in the Declaratory Judgment Action. However, statements made in the course of litigation are absolutely privileged as long as they are pertinent to the subject of the litigation. Front v. Khalil, 24 N.Y.3d 713, 718-20 (2015). Burton recognized that this absolute privilege exists when he withdrew his defamation claim. (Reply Decl., ¶¶ 8-9, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 36.) In Front, the New York Court of Appeals noted that "[It] is well-settled that statements made in the course of litigation are entitled to absolute privilege," when they are pertinent to the action, regardless of the attorney's motive for making them. Front, 24 N.Y.3d at 718-20 (citing Youmans v. Smith, 153 N.Y. 214, 219-220 (1897); Park Knoll Assoc. v. Schmidt, 59 N.Y.2d 205, 209 (1983); Wiener v. Weintraub, 22 N.Y.2d 330, 331 (1968)). Where the privilege is invoked, "any doubts are to be resolved in the favor of pertinence." Flomenhaft v. Finkelstein, 127 A.D.3d 634, 637 (1st Dep't 2015) (internal quotation marks omitted). The New York Court of Appeals has explained:

> If the alleged defamatory words used by counsel or a party in the course of a judicial proceeding may possibly be pertinent they are privileged. It is only when the language used goes beyond the bounds of reason and is so clearly impertinent and needlessly defamatory as not to admit of discussion that the privilege is lost.

People ex rel. Bensky v. Warden of City Prison, 258 N.Y. 55, 59 (1932). "[T]he statement must

be so outrageously out of context as to permit one to conclude, from the mere fact that the statement was uttered, that it was motivated by no other desire than to defame." Martirano v. Frost, 25 N.Y.2d 505, 508 (1969).

Applying this standard, it is clear that any statements made by the Trustee concerning Burton and his dealings with the Apartments in the Declaratory Judgment Action are privileged. Although Burton failed to identify with specificity the statements by the Trustee which he believes constitute intentional infliction of emotional distress, it is clear that the Trustee's allegations concerning Burton's lack of good faith and concealment from the Trustee of his claimed acquisition of the Debtor's interest in the Apartments were pertinent to the Declaratory Judgment Action, which required a balancing of the equities between Burton and the Trustee. In re Swift, 496 B.R. 89, 99-102 (Bankr. E.D.N.Y. 2013) (Decision, p.11-16, Adv. Pro. No. 12-01044, ECF Doc. No. 76.)

Front, and the other cases cited above, dealt with defamation claims, but the privilege is equally applicable to intentional infliction of emotional distress claims. Taggart v. Moody's Investors Serv., Inc., No. 06-CV-3388-PKC, 2007 WL 2076980, at *6 (S.D.N.Y. July 17, 2007) ("[A] plaintiff's claim for intentional infliction of emotional distress cannot arise out of statements made during a judicial or quasi-judicial proceeding where those statements are material and pertinent to the questions involved in the proceedings.") (Internal quotation marks and citations omitted). Claims for intentional infliction of emotional distress based upon the filing of a lawsuit or statements made therein have been summarily dismissed. Kaye v. Trump, 58 A.D.3d 579, 580, (1st Dep't 2009) ("[S]tatements and actions occurred in the context of adversarial litigation and therefore cannot provide a foundation for the [intentional infliction of emotional distress] claim."); Yalkowsky v. Century Apartments Associates, 626 N.Y.S.2d 181,

183 (1st Dep't 1995) ("A claim for intentional infliction of emotional distress based upon allegations involving statements and actions in the context of adversarial litigation must be dismissed."); Franco v. Diaz, 51 F. Supp. 3d 235, 243 (E.D.N.Y. 2014) ("[I]t is well established that under New York law, the commencement of litigation, whether civil or criminal, cannot form the basis for an intentional infliction of emotional distress claim."); Walentas v. Johnes, 683 N.Y.S.2d 56, 58 (1st Dep't 1999) ("Commencement of litigation, even if alleged to be for the purpose of harassment and intimidation, is insufficient to support [an intentional infliction of emotional distress] claim.").

Plaintiff's claim for intentional infliction of emotional distress is, therefore, dismissed.

B.  Plaintiff's Claim for Rule 9011 Sanctions

Burton seeks an award of $300,000 in legal fees "incurred pro se," pursuant to Rule 9011. (Compl., ¶ 26, Adv. Pro. No. 14-1045-CEC, ECF Doc. No. 1.)  Rule 9011 authorizes a bankruptcy court to "impose sanctions upon attorneys, law firms, or parties for the filing and prosecution of pleadings and other papers which are found to be frivolous under Rule 9011(b)." In re Belmonte, 524 B.R. 17, 29 (Bankr. E.D.N.Y. 2015); In re Parikh, 508 B.R. 572, 584 (Bankr. E.D.N.Y. 2014). Rule 9011(c)(2) authorizes a bankruptcy court to impose sanctions, "directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses *incurred* as a direct result of the violation" (emphasis added).

Burton's complaint does not identify which statements in the record he believes violate Rule 9011(b) and he has not demonstrated that Defendants have violated Rule 9011 in any respect. However, in any case, it is clear that as a non-lawyer *pro se* litigant Burton cannot recover under this rule. As explained by the Eleventh Circuit, in a leading decision on this point, "[b]ecause a party proceeding *pro se* cannot have incurred attorney's fees as an expense, a

district court cannot order a violating party to pay a *pro se* litigant a reasonable attorney's fee as part of a sanction." Massengale v. Ray, 267 F.3d 1298, 1302-03 (11th Cir. 2001). "[T]he word 'attorney' connotes an agency relationship between two parties (client and attorney), such that fees a lawyer might charge himself are not 'attorney fees,'" since "[o]ne cannot 'incur' fees payable to oneself." Pickholtz v. Rainbow Technologies, Inc., 284 F.3d 1365, 1375 (Fed. Cir. 2002); *see also* Kay v. Ehrler, 499 U.S. 432, 435-36 (1991) ("[T]he word 'attorney' assumes an agency relationship…"). In Massengale, the litigant attempting to collect attorneys' fees under Fed. R. Civ. P. 11 was, unlike Mr. Burton, a licensed attorney[3]. Clearly, therefore, a non-attorney *pro se* litigant, such as Mr. Burton, may not be awarded attorneys' fees under Rule 9011. Accordingly, Burton's claim for attorneys' fees is dismissed.

C.  Plaintiff's Claim Under New York Judiciary Law § 487

Burton complains that Defendants have violated New York Judiciary Law § 487, which provides:

> An attorney or counselor who:
>
> 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
>
> 2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
>
> Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

Burton does not explain in his complaint precisely how he believes that Defendants' conduct in the Declaratory Judgment Action has violated this statute, or which sections of the

---

[3] Plaintiff was once a licensed attorney but has not been since he was suspended from the New York Bar in 1994. *See* Matter of Burton, 200 A.D.2d 324 (1st Dep't 1994).

statute he believes have been violated. Nevertheless, any claim against Defendants by Burton based on a violation of New York Judiciary Law § 487 must be dismissed. "[A]ssertion of unfounded allegations in a pleading, even if made for improper purposes, does not provide a basis for liability under the statute." Thomas v. Chamberlain, D'Amanda, Oppenheimer & Greenfield, 497 N.Y.S.2d 561, 562 (4th Dep't 1985). New York courts limit the application of Judiciary Law § 487 to claims that the defendant attorney has intentionally "engaged in a chronic, extreme pattern of legal delinquency." O'Callaghan v. Sifre, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) (internal quotation marks and citations omitted); Ulrich v. Hausfeld, 704 N.Y.S.2d 495 (2nd Dep't 2000). There is simply nothing like that present here.

In addition, Burton was required to bring any claims based on alleged violation of New York Judiciary Law § 487 in the Declaratory Judgment Action, not in a separate proceeding. Yalkowsky v. Century Apartments Associates, 626 N.Y.S.2d 181, 183 (1st Dep't 1995); Chibcha Rest., Inc. v. David A. Kaminsky & Associates, P.C., 958 N.Y.S.2d 135 (1st Dep't 2013); All. Network, LLC v. Sidley Austin LLP, 987 N.Y.S.2d 794, 802 (Sup. Ct. N.Y. Cty. 2014) ("Plaintiffs should have sought their remedies in the cases in which the wrongdoing allegedly was committed.").

Accordingly, Plaintiff's claim based on violation of New York Judiciary Law § 487 is dismissed.

D.  Plaintiff's Request for "Expungement"

The complaint requests "expungement from the on-line record of #12-[0]1044 of all false allegations made by defendants about plaintiff." (Compl., ¶ 26, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 1.)   This claim will be treated as a request that access to the record of the Declaratory Judgment Action be restricted under § 107.

This request must be considered in light of the strong public policy in favor of public access to court records. "Papers filed with the court d[o] not fall within the exception 'merely because they would have a detrimental impact on an interested party's reputation.'" In re Food Mgmt. Grp., LLC, 359 B.R. 543, 553-5 (Bankr. S.D.N.Y. 2007) (citing In re Gitto Global Corp., 422 F.3d 1, 11 (1st Cir. 2005)). Furthermore, "[t]he public interest in openness of court proceedings is *at its zenith* when issues concerning the integrity and transparency of bankruptcy court proceedings are involved," because creditors need to be able to depend on the openness and integrity of the system. Food Mgmt. Grp., 359 B.R. at 553 (emphasis added). Thus, "exceptions to public access are construed narrowly." In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994).

Section 107 provides that "[o]n request of a party in interest, the bankruptcy court shall…(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed under a case under this title." Because the statute is in the disjunctive, each prong must be analyzed separately.

   1. Scandalous Matter

"Neither §107 nor any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Federal Rules of Civil Procedure define 'scandalous matter.'" In re Starbrite Properties Corp., No. 11-40758-CEC, 2012 WL 2050745, at *6 (Bankr. E.D.N.Y. June 5, 2012) (citing Food Mgmt. Grp., 359 B.R. at 555). While it is possible to look to dictionary definitions— Black's Law Dictionary, for example, defines "scandalous matter" as "[i]nformation that is improper in a court paper because it is both grossly disgraceful (or defamatory) and irrelevant to an action or defense"—courts have generally looked for guidance in interpreting § 107(b)(2) to jurisprudence explaining the meaning of "scandalous matter" under Fed. R. Civ. P. 12(f), which

provides that "[t]he court may strike from a pleading…any…scandalous matter." Food Mgmt. Grp, 359 BR at 557-58 (citing Gitto Global Corp., 422 F.3d at 12; In re Phar-Mor, Inc., 191 B.R. 675, 678-79 (Bankr. N.D. Ohio 1995); Hope on Behalf of Clark v. Pearson, 38 B.R. 423, 424 (Bankr.M.D.Ga.1984)); *Scandalous Matter*, BLACK'S LAW DICTIONARY (10th ed. 2014). One leading treatise defines "scandalous" in the Fed. R. Civ. P. 12(f) context as "any allegation that *unnecessarily* reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." 2-12 MOORE'S FEDERAL PRACTICE - CIVIL § 12.37 (2015) (emphasis added). Accordingly, "To prevail on [a] motion to strike, [under Fed. R. Civ. P. 12(f)] the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." 2-12 MOORE'S FEDERAL PRACTICE - CIVIL § 12.37 (2015) (internal quotation marks omitted). "The relevance standards articulated in the context of [Fed. R. Civ. P.] 12(f) apply as well in determining whether protection is warranted under § 107(b)(2)." Food Mgmt.Grp., 359 B.R. at 558-59. Thus, "courts will not strike scandalous statements that offend the sensibilities of the objecting party if the challenged allegations describe acts or events relevant to the action," because, "it is not enough that the matter offends the sensibilities of the objecting party or the person who is the subject of the statements in the pleading, if the challenged allegations describe acts or events that are relevant to the action." Food Mgmt. Grp., 359 B.R. at 558, 561.

Section 107 is not intended to save litigants from embarrassment, and harm to a party's reputation is not sufficient to invoke § 107(b)(2). Food Mgmt. Grp., 359 B.R. at 554-55; In re Muma Services Inc., 279 B.R. 478, 484 (Bankr. D. Del. 2002); Gitto Global Corp., 422 F.3d at 11. "The unintended, potential secondary consequences of negative publicity," even where

regrettable, do not warrant sealing, and consequently, "[i]n cases analyzing § 107(b)(2), courts have repeatedly stated that injury or potential injury to reputation is not enough to deny public access to court documents." In re Neal, 461 F.3d 1048, 1054 (8th Cir. 2006).

Plaintiff complains of statements, which he does not precisely identify, which in his view accuse him:

> A. of intentionally concealing the 44-14 [Apartments] Claim from plaintiff with the specific intent of criminally defrauding the Swift bankruptcy estate of its value
> B. of having acted in concert with Debtor John Swift to fraudulently conceal that Claim from plaintiff with the specific intent of depriving the Swift bankruptcy estate of its benefit

(Compl. ¶ 11, Adv.Pro. No. 14-01045-CEC, ECF Doc. No. 1.) Even assuming that this summary is an accurate characterization of statements made in the Declaratory Judgment Action, because the statements were relevant to the Declaratory Judgment Action they cannot be sealed or removed from the public record as scandalous, regardless of how Plaintiff feels they may reflect upon his reputation.

    2. <u>Defamatory Matter</u>

In <u>Gitto</u>, the First Circuit concluded that to invoke § 107(b)(2)'s provision for protection of a person from defamatory material in the public record, "an interested party must show (1) that the material at issue would alter his reputation in the eyes of a reasonable person, and (2) that the material is untrue or that it is potentially untrue and irrelevant or included for an improper end." <u>In re Gitto Global Corp.</u>, 422 F.3d 1,16 (1st Cir. 2005). A different standard was adopted in <u>Food Mgmt. Grp.</u>, where that Court concluded that the defamatory matter prong of § 107(b)(2) "protects only against untrue statements, [as] [d]efamation law leaves no room for inserting the relevance and improper purpose inquiry that the scandalous matter prong of

§ 107(b)(2) more comfortably incorporates. Nor does defamation law extend its reach to *potentially* untrue statements." In re Food Mgmt. Grp., LLC, 359 B.R. 543, 560-61 (Bankr. S.D.N.Y. 2007). In this case it is unnecessary to decide between these standards because, as explained above, any statements in the papers filed by the Trustee concerning Burton's good faith and his dealings with the Apartments were relevant to the Declaratory Judgment Action. Thus, in determining whether Plaintiff is entitled to protection from defamatory statements under § 107 it is necessary to ask only whether the statements complained of are untrue. However—and on this point Gitto and Food Mgmt. Grp. are in full harmony—that the statements are untrue must be readily apparent on their face:

> "We…emphasize that although a bankruptcy court *may* grant protection under § 107(b)(2) based on a showing of untruthfulness, protection on this basis is available only in the rare case where the untruthfulness is readily apparent. Bankruptcy courts are under no obligation to resolve questions of truthfulness presented by a § 107(b)(2) motion where doing so would require discovery or additional hearings, or would be otherwise burdensome."

Gitto Global Corp., 422 F.3d at 11.

> "In this Court's view, protection against "defamatory matter" only applies for statements that are untrue, and that can be clearly shown to be untrue without the need for discovery or a mini-trial. Section 107(a) creates a strong presumption that court records are public; only clear evidence of impropriety can overcome the presumption and justify protection under § 107(b)(2)."

Food Mgmt. Grp., 359 B.R. at 556 (footnotes omitted).

Plaintiff has not come close to meeting this standard. Again, assuming *arguendo* that Plaintiff's summary is an accurate characterization of any statement by the Trustee in the Declaratory Judgment Action, this court cannot find, and the Declaratory Judgment Action opinion did not hold, that any statement by the Trustee concerning Burton's dealings with the Apartments are false and certainly not that they are clearly false. Moreover, any prejudice that

15

Plaintiff feels he suffered on account of these statements must be mitigated by the fact that he had a full opportunity to respond on the record in the Declaratory Judgment Action and his responses will continue to be visible to the public along with Defendants' filings.

Plaintiff's request for expungement of the record in the Declaratory Judgment Action is denied.

### E. Defendants' Counterclaim for Sanctions Under 28 U.S.C. § 1927

Defendants' counterclaim seeks sanctions in the form of attorneys' fees. Defendants rely upon two grounds for the imposition of sanctions: 28 U.S.C. §1927, and the inherent authority of this Court to sanction those who pursue frivolous litigation.

Defendants urge that this Court impose sanctions on Plaintiff pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Defendants argue that Burton's complaint is so "utterly devoid of merit that it can only have been filed to harass the Defendants." (Answer, Adv. Pro. No. 14-01045-CEC, ECF Doc. No. 15.)

The Second Circuit has held that § 1927 does not apply to non-attorney *pro se* litigants. Sassower v. Field, 973 F.2d 75, 80 (2d Cir.1992) ("[T]he word "admitted" in this context suggests application to those who, like attorneys, gain approval to appear in a lawyerlike capacity."). This understanding of § 1927 was implicitly endorsed by the Supreme Court in Chambers v. NASCO, Inc., 501 U.S. 32:

> [T]he Supreme Court recently recounted, without disagreement, a District Court's assertion that section 1927 "applies only to attorneys." *See Chambers v. NASCO, Inc.*, 501 U.S. 32, ——, 111 S.Ct. 2123, 2131, 115 L.Ed.2d 27 (1991). This reference implies approval of the District Court's view, since there would have been no need for the Supreme Court to consider the larger question of the trial judge's inherent authority to sanction if section 1927 had applied to the non-lawyer.

Sassower, 973 F.2d at 80.

Though § 1927 provides no basis to sanction a non-attorney *pro se* litigant, the statute does permit the imposition of sanctions on licensed attorneys who choose to proceed *pro se*. Sassower, 973 F.2d at 80; Davey v. Dolan, 292 F. App'x 127, 128 (2d Cir. 2008). Here, however, Burton is not a licensed attorney. Though he was once licensed to practice law in New York, he has been unlicensed since 1994. *See* Matter of Burton, 200 A.D.2d 324 (1st Dep't 1994). Under the New York Judiciary Law § 478, a non-licensed attorney is prohibited from practicing law, and may appear in court only in a *pro se* capacity. Any such person is treated as a non-lawyer. Farb v. Baldwin Union Free Sch. Dist., No. 05-CV-0596-JS/ETB, 2011 WL 4465051, at *11 (E.D.N.Y. Sept. 26, 2011) ("[S]uspended or disbarred attorney holds approximately the same status as one who has never been admitted.") (Internal quotation marks and citation omitted); In re NASDAQ Mkt.-Makers Antitrust Litig., 187 F.R.D. 124, 129 (S.D.N.Y. 1999) ("A disbarred attorney, however, is by definition not 'admitted to conduct cases' in Federal court. [He] appears in this action as a *pro se* litigant, and accordingly, he is not subject to sanctions under § 1927."). Thus, in light of Burton's status as a non-lawyer, he may not be sanctioned under 28 U.S.C § 1927.

Defendants urge that if it is not possible to sanction Burton under 28 U.S.C § 1927, he nonetheless should be sanctioned on the basis of the inherent power of the court to control the proceedings that come before it. (Mot. for J. on the Pleadings, ¶22, Adv. Pro. 14-01045-CEC,

ECF Doc. No. 28.)  It is true that "[f]ederal courts, including bankruptcy courts, possess inherent authority to impose sanctions against attorneys and their clients." In re Campora, No. 14-CV-5066-JFB, 2015 WL 5178823, at *12 (E.D.N.Y. Sept. 3, 2015) (citing MA Salazar, Inc. v. Inc. Vill. of Atl. Beach, 499 B.R. 268, 274 (E.D.N.Y.2013)). Courts may invoke their inherent power to sanction litigants in the presence of bad faith: "[u]nder its inherent powers to supervise and control its own proceedings, a bankruptcy court 'may impose sanctions where: 1) the challenged claim was without a colorable basis and 2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." In re Campora at 12 (citing In re Lerner, 515 B.R. 26, 34 (Bankr.E.D.N.Y.2014)).

The record does not support Defendants' assertion that Burton filed this adversary proceeding to harass or retaliate against Defendants. Plaintiff's filings certainly bear the hallmarks of a *pro se* litigant, and Plaintiff's complaint must be dismissed. However, the record provides no basis to conclude that Burton commenced this proceeding in bad faith. In fact, when he discovered recent precedent which he believed undermined his defamation claim, Plaintiff immediately withdrew that claim. (Reply Decl., ¶¶8-9, Adv. Pro. 14-01045-CEC, ECF Doc. No. 36.)

Defendants' motion for judgment on their counterclaim for sanctions is denied.

**Conclusion**

For the reasons set forth above, Defendants' motion for judgment on the pleadings is granted, and Plaintiff's complaint is dismissed. Defendants' motion for judgment on their counterclaim for sanctions is denied, and Defendants' counterclaim is dismissed. A separate order will issue.



Dated: Brooklyn, New York
January 27, 2016

Carla E. Craig
United States Bankruptcy Judge